# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. '22 MJ3814
Blue 1+ Phone )
Seized as FP&F No. 2022565200008604 Item 0001 )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-4, incorporated by reference herein.

located in the _Southern_ District of _California_, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. sec. 1324 | Alien smuggling |

The application is based on these facts:
See attached Affidavit of Border Patrol Agent Adnane Benchekroun, incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Adnane Benchekroun*
Applicant's signature

Adnane Benchekroun, Border Patrol Agent - Intelligence
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _telephone_ *(specify reliable electronic means)*.

Date: 10/17/2022
Judge's signature

City and state: San Diego, California
Hon. Karen S. Crawford, United States Magistrate Judge
Printed name and title

# ATTACHMENT A-4

PROPERTY TO BE SEARCHED

The following property is to be searched:

Blue 1+ Phone
Seized as FP&F No. 2022565200008604 Item 0001
("**Target Device 4**")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

1

# ATTACHMENT B-1
ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1, A-3, A-4, and A-5 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **August 7, 2022, up to and including September 6, 2022**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States; and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 8, United States Code, Section 1324.

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS**

I, Adnane Benchekroun, Border Patrol Agent – Intelligence, being duly sworn, hereby state as follows:

**INTRODUCTION**

1. I submit this affidavit in support of an application for warrants to search the following electronic devices:

>White Apple iPhone 8
>Seized as FP&F No. 2022565200008602 Item 0002
>("**Target Device 1**")
>
>Gray Galaxy Samsung Phone
>Seized as FP&F No. 2022565200008601 Item 0002
>("**Target Device 2**")
>
>Blue Motorola Phone
>Seized as FP&F No. 2022565200008603 Item 0001
>("**Target Device 3**")
>
>Blue 1+ Phone
>Seized as FP&F No. 2022565200008604 Item 0001
>("**Target Device 4**")
>
>White Android One Phone
>Seized as FP&F No. 2022565200008605 Item 0001
>("**Target Device 5**")

(collectively, the "**Target Devices**"), as further described in Attachments A-1 through A-5, and to seize evidence of crimes, specifically, violations of Title 8, United States Code, Section 1324 (alien smuggling), as further described in Attachment B.

2. The requested warrants relate to the investigation of an identified alien-smuggling organization and prosecution of individuals associated with it, including Esperanza AHUMADA-Sanchez and Jose Alfredo PINTOR-Leal, who have been indicted for transportation of illegal aliens within the United States and aiding and abetting, and conspiracy to transport aliens. AHUMADA and PINTOR were arrested on September 6, 2022 and are defendants in a pending criminal case in the Southern District of California.

1

For the reasons set forth herein, I believe there is probable cause to believe that the Target Devices contain evidence of alien-smuggling, and I believe these devices relate to and contain evidence relevant to at least AHUMADA and PINTOR's offenses. The Target Devices currently are in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. On September 13, 2022, the Honorable Allison H. Goddard found probable cause and approved search warrants for **Target Devices 1 and 2**, for the time period August 7, 2022, up to and including September 7, 2022. Those warrants were not executed by agents within the warrants' 14-day time period for execution because of a miscommunication resulting in the phones not being taken to the forensics laboratory for extraction within that timeframe. Accordingly, I submit this affidavit in support of new warrants for **Target Devices 1 and 2** as well as for **Target Devices 3, 4, and 5**—and as to **Target Device 2**, for the time period **June 4, 2022, up to and including September 6, 2022**.

4. The facts set forth in this affidavit are based upon my personal observations, my experience in and knowledge of the investigation of the subject smuggling organization, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is made solely for the purpose of establishing probable cause for the requested warrants and does not purport to set forth all of my or other agents' knowledge of the investigation. Unless stated otherwise, all dates and times are approximate.

## TRAINING AND EXPERIENCE

5. I have been employed by the USBP since 2012 and am currently assigned to the San Diego Sector Intelligence Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten years. I am

2

authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

6. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

7. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point

operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on

4

their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. I and other Border Patrol Agents have investigated an alien-smuggling organization of which AHUMADA, PINTOR, and a number of other individuals are a part. Agents have interdicted several smuggling events relating to this organization since approximately April 2022, and a total of five subjects relating to the investigation are defendants in pending cases in the Southern District of California: AHUMADA and

PINTOR, as co-defendants in one case; and in another case, Pedro Garcia-Altamirano a/k/a Esteban Rodriguez-Chavez, Gerardo Gaytan-Valdovinos, and Antonio Guzman-Villela.

12. The investigation thus far has involved several search and tracking warrants. For instance, on June 28, 2022, the Honorable Allison H. Goddard approved a tracking warrant for a white 2016 Kia Optima, and on July 28, 2022, the Honorable Barbara L. Major approved a further tracking warrant for the Kia (same VIN but reflecting the fact that its license plates had changed shortly after the initial warrant was approved). This vehicle is registered to PINTOR. Pursuant to the tracking warrant, agents monitored the Kia between July 29, 2022, and the event on September 6, 2022 discussed below, during which the vehicle was seized. In addition, on September 11, 2022, the Honorable Allison H. Goddard approved search warrants for two residences associated with the organization, which had been used as "stash houses" and involved in multiple smuggling events. On September 20, 2022—during the search of one of these residences, in Bonita (the "Bonita house") pursuant to the warrant for it—the Honorable Mitchell D. Dembin approved a further warrant for the Bonita house, for the seizure of firearms- and narcotics-related evidence. During the initial search of that property, agents discovered several firearms and related items (later identified as three handguns, an unserialized AR-15-style rifle, an unserialized revolver, and over 1300 rounds of ammunition, among other things), and a substance later identified as cocaine, and agents seized these items pursuant to the warrant authorized by Judge Dembin. Pedro Garcia-Altamirano a/k/a Esteban Rodriguez-Chavez, Gerardo Gaytan-Valdovinos, and Antonio Guzman-Villela are defendants in the case arising from the execution of the search warrants on the Bonita house.

13. The **Target Devices** are in the possession of Border Patrol, San Diego Sector and are the subjects of the requested warrants because of a September 6, 2022 smuggling event involving AHUMADA and PINTOR. On that day, at approximately 4:48 PM, through a surveillance camera, I electronically observed two vehicles arrived at the Bonita stash house. One of the vehicles was a black Acura TL (the "Acura"), which was observed during a smuggling event on August 21, 2022. On that date, agents suspected the Acura

was one of two vehicles used to smuggle illegal aliens. Agents observed the two vehicles arrive and depart the Bonita house in tandem, after being there for only a few minutes. Based on previous interdicted alien smuggling events originating from the Bonita stash house, I believed an alien smuggling event was taking place.

14. Around the same time, members of the Border Patrol Sector Intelligence Unit (SIU) Sector Intelligence Team Northeast (SIT NE) were conducting surveillance duties at a different residence, on Eta Street in San Diego, which also had been identified as a stash house. The Honorable Allison H. Goddard approved a search warrant for this residence on September 11, 2022. At approximately 3:49 p.m. on September 6, an agent observed PINTOR exit the Kia and walk into the Eta Street house. At approximately 5:00 p.m., PINTOR left the residence on Eta Street, overheard him say into the phone, "I'm on my way over there!" (original in Spanish, "Ya voy para aya!"), and saw him leave the residence in the Kia. Agents continued monitoring him and the Kia, including through tracking-warrant data pursuant to the tracking warrant mentioned above. Agents observed it traveling north on Interstate 15, and an agent began trailing it at a distance. At approximately 5:45 p.m., that agent broke off physical pursuit and stopped underneath an overpass. Within 15 minutes, at approximate 5:59 p.m., the same agent observed the Acura drive past him on Interstate 15, appearing to ride low in the rear and bounce when it went over bumps. The Acura then slowed and exited Interstate 15, onto Highway 76.

15. At approximately the same time, other agents observed the Acura and, in running its plates, determined it was the same Acura involved in a August 21, 2022 smuggling event. They followed the vehicle as it took a route that circumvented the Border Patrol checkpoint on Interstate 15: a route agents know is used by smugglers for this purpose. The agents followed the Acura until it stopped at a gas station on Temecula Parkway in Temecula, California, at approximately 6:15.

16. At approximately 6:05 p.m., an agent saw the Kia going north on Interstate 15, and it continued to be monitored as it exited and stopped at a different gas station on Temecula Parkway, but within one mile of the station the Acura had stopped at. The two

vehicles were thus within 15 minutes of each other on the highway and 10 minutes of each other at gas stations very close to each other. Based on my training and experience, the observed activities of this organization, and the apparent coordination on this occasion, I believe PINTOR was acting as a scout for the Acura, which likely was transporting illegal aliens.

17. At approximately 6:35 p.m., agents including myself approached the Acura as it remained at the gas station. An agent conducted an immigration inspection on the driver, identified as Esperanza AHUMADA-Sanchez, who stated she is a citizen of Mexico without documents allowing her to be in the United States legally. The three passengers in the vehicle stated they too are Mexican citizens without legal status in the United States. AHUMADA and the three other subjects were arrested. The three subjects other than AHUMADA were identified as material witnesses Humberto GARCIA-Vazquez, Facundo MARTINEZ-Mondragon and Cristobal Martin PULIDO-Castellon.

18. At approximately the same time, another agent was informed of the encounter with the Acura and its occupants, and he observed the Kia on Interstate 15 approximately 15 minutes later. The Kia was stopped on the Interstate under the overpass of State Route 78, within the Southern District of California; it had driven south from Temecula after stopping at the gas station there. The agent conducted an immigration inspection of the driver, PINTOR, who stated he is a lawful permanent resident. PINTOR was arrested.

19. After processing, AHUMADA was advised of and waived her *Miranda* rights. She stated she had met with an unidentified person who transferred the illegal aliens into the vehicle she was driving, and she had been provided with the vehicle by a different person. She admitted to having transported undocumented people eight times before this, and this time, she was going to be paid $800.

20. After material witnesses GARCIA, MARTINEZ and PULIDO were apprehended, GARCIA and PULIDO stated in interviews with agents that they had smuggling arrangement in which they were going to pay between $5,000 USD to $13,000. GARCIA and PULIDO were shown two different photo arrays wherein the pictures of the

8

defendants AHUMADA and PINTOR were depicted. PULIDO was able to identify AHUMADA as the driver of the load vehicle. All three material witnesses stated to agents that they had used their cell phones to make smuggling arrangements while in Mexico, before entering the United States.

21. At the time of AHUMADA's arrest, **Target Device 1** was discovered in the center console of the Acura, and she claimed ownership of it.

22. At the time of PINTOR's arrest, **Target Device 2** was found in PINTOR's front pocket, and PINTOR claimed ownership of it.

23. During an inventory search of the Acura, three other cell phones were found and seized. Agents showed GARCIA, PULIDO, and MARTINEZ all three of these phones. GARCIA claimed **Target Device 3** as his, PULIDO claimed **Target Device 4** as his, and MARTINEZ claimed **Target Device 5** as his.

24. Based on my training and experience, including my knowledge of alien smuggling and the statements of subjects involved in the offense, I believe there is probable cause to search **Target Devices 1, 3, 4, and 5** from **August 7, 2022, up to and including September 6, 2022**.

25. As noted, agents have interdicted several smuggling events involving the subject organization. As relevant here, I believe a June 3, 2022 event involving PINTOR justifies a search of his phone—**Target Device 2**—from **June 4, 2022, up to and including September 6, 2022**. That event is outlined below.

26. On June 3, 2022, Border Patrol Agents conducted a consensual encounter with PINTOR near Fallbrook, California. An agent observed a white Chrysler 200 sedan bearing Baja California, Mexico plates and registered to PINTOR traveling north on Interstate 15. Crossing records showed that PINTOR crossed the border from Mexico into the United States in a different vehicle, a Ford Expedition, approximately four hours earlier that same morning. The Honorable Allison H. Goddard had approved a tracking warrant for this vehicle on June 28, 2022. Based on PINTOR's activities and driving behavior on this occasion, agents believed he was scouting for an alien smuggling event, and an agent spoke

9

with PINTOR near a convenience store, after PINTOR pulled off the Interstate. The agent who encountered PINTOR there confirmed the driver was him through record checks, including photos. While agents were speaking with PINTOR, other agents located a gray Ford F-150 bearing California license plates that had just crossed through a Border Patrol Checkpoint nearby. This Ford F-150 also was registered to PINTOR, and I believe it is the same Ford that has been observed at the 40th Street House through surveillance on that property. Agents initiated a vehicle stop on the Ford, but it failed to yield. After a pursuit, agents arrested two illegal alien principals and three smuggled illegal aliens. The driver was identified as Ivan Pulido-Jauregui. Agents arrested Pulido, PINTOR, and the second principal in the Ford, who were not prosecuted for that event.

27. PINTOR's and other subjects' phones from that event were seized and searched pursuant to warrants authorized by a Magistrate Judge in the Central District of California.

28. Based on PINTOR's involvement in smuggling aliens after June 3, 2022, and his possession of a phone during the September 6 event discussed above, and my training and experience, I believe PINTOR obtained a new cellular device—**Target Device 2**—shortly after the June 3 event, and I believe there is probable cause to search **Target Device 2** from **June 4, 2022, up to and including September 6, 2022**.

## METHODOLOGY

29. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure

environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

30. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

31. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

32. On September 13, 2022, the Honorable Allison H. Goddard approved search warrants for **Target Device 1** and **Target Device 2**. The warrants for the two devices expired before agents executed the warrants, as noted above. The government has not otherwise attempted to obtain the evidence sought through the warrants requested here.

//
//

**CONCLUSION**

33. Based on the foregoing, I believe there is probable cause to search the **Target Devices** for evidence of violations of Title 8, United States Code, Section 1324. Accordingly, I request that the Court issue warrants authorizing the search of the **Target Devices**, as set forth in Attachments A-1 through A-5, and to seize evidence as set forth in Attachment B-1 (providing for searches from **August 7, 2022, up to and including September 6, 2022**) and B-2 (providing for a search from **June 4, 2022, up to and including September 6, 2022**).

I swear the foregoing is true and correct to the best of my knowledge, information, and belief.

*Adnane Benchekroun*
Adnane Benchekroun
Border Patrol Agent – Intelligence

Subscribed and sworn to before me this 17th day of October, 2022.

_____
Honorable Karen S. Crawford
United States Magistrate Judge